378

SAMUEL MIDLINSKY *et al.* Appellees, *vs.* SOL RUBIN, Appellant.

*Opinion filed October 25, 1930—Rehearing denied Dec. 6, 1930.*

GRANVILLE W. BROWNING, and EDWARD M. KEATING, for appellant.

EPSTEIN & ARVEY, (LOUIS M. MANTYNBAND, and NORMAN ASHER, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county enjoining appellant from prosecuting a certain cause in the superior court of Cook county or any court, and from instituting or maintaining any proceedings, either in law or in equity, of a vexatious character against appellees affecting the real estate involved in the said bill filed in the superior court. The bill in this case sets up the previ-

ous proceedings had in relation to that real estate, alleging that such proceedings were *res judicata* of the issues involved in the bill attacked and that the said bill filed in the superior court was for the purpose of harassing and annoying appellees. Appellant answered the bill, denying that the previous suits and proceedings were *res judicata* of the issues raised in his bill filed in the superior court and filed a cross-bill seeking to have the title to the real estate decreed in himself and for an accounting. To the cross-bill appellees filed a plea of *res judicata,* which was held sufficient, as was the plea touching the matters involved in the bill filed in the superior court, and the decree granting the prayer of the bill of appellees herein and dismissing appellant's cross-bill was entered. Appellant brings the cause here and argues numerous assignments of error, the principal of which are that the issues raised in the bill filed in the superior court and in the cross-bill filed herein were and are different issues on different statements of fact from those raised in the proceedings claimed by appelles to constitute *res judicata* and therefore the decision on the first bill is not *res judicata.* It is also argued that the decision on the first bill was not on the merits but on a demurrer filed to a defective bill.

In order to understand the issues involved in this proceeding it is necessary to set out a summary of the proceedings in the suits had between these parties. On April 12, 1922, appellant filed his amended bill in the circuit court of Cook county (designated and hereinafter referred to as No. B84300) against appellees, Samuel Midlinsky, Israel Blume and Chicago Title and Trust Company, seeking a decree finding that lots 35 and 36 in Feinberg & Loeffler's Douglas Boulevard addition to the city of Chicago equitably belong to appellant and for a decree requiring the defendants therein named to transfer the property to him. Midlinsky and Blume interposed general and special demurrers, which, on hearing, were sustained and appellant's bill dismissed for want of equity. From that decree he appealed

to the Appellate Court for the First District, where the decree of the circuit court was affirmed. Appellant thereupon filed a petition for *certiorari* in this court, which was denied. On April 11, 1924, he filed a bill in the superior court of Cook county against Midlinsky, Blume and one Charles L. Cohns as trustee, this cause being numbered and herein referred to as No. 401896. To this bill Midlinsky and Blume interposed a plea of *res judicata,* which was sustained and the bill dismissed. This decree was later affirmed by the Appellate Court for the First District and *certiorari* denied by this court. On February 27, 1928, appellant filed in the superior court of Cook county another bill against Blume, Midlinsky and Cohns as trustee, designated and herein referred to as No. 472406. This is the bill against the prosecution of which appellees are seeking injunctional relief.

Appellees' bill for injunction sets out that the matters and things alleged and issues raised in bill No. 472406 have been decided, and that that bill was filed against them by appellant purely as a matter of harassment and vexation. The issue involved here is whether the decree on bill No. B84300, filed in the circuit court on April 12, 1922, is *res judicata* of the issues involved in bill No. 472406, and whether injunction should lie against appellant restraining him from prosecuting bill No. 472406. This depends on whether the facts and issues are the same. It is admitted that the property involved is the same. To determine this issue it is necessary to first observe what was contained in and decided on bill No. B84300. That bill alleged that Rubin on April 15, 1915, owned an undivided one-third of the property in question and on that date purchased an additional undivided one-third from one Abner Bernstein; that on that date Lillian Jackson owned the remaining one-third; that at that time two trust deeds existed against the property—a first trust deed for $3000 held by Laura Brandstetter and a second for $2787.50 held by Morris

Levin; that foreclosure proceedings were begun on both trust deeds and a sale was had of the premises, and that the twelve months' period for redemption by the owners of the equity expired on November 26, 1916, as to the Levin foreclosure and on January 10, 1917, as to the Brandstetter foreclosure. It also was alleged in this bill that on September 1, 1916, approximately three months before the expiration of the first right of redemption by the holder of the equity, Midlinsky attempted to sell the lots to one Jacob Feder for $10,500 under an agreement that Feder should proceed at once to erect a building thereon and when same was completed to place a first mortgage on the improved premises and out of the proceeds pay Rubin $5000 and give a second mortgage for the balance of $5500, and that Midlinsky agreed to take the second mortgage and pay cash therefor, and, after retaining $500 for his compensation and commissions, to pay the residue over to Rubin. As a part consideration for this agreement Rubin agreed to purchase the one-third interest of Lillian Jackson. The bill alleges that the legal adviser for Rubin held the earnest money. It is alleged that Feder proceeded to build, when he was stopped by the holder of the certificate of sale under the Brandstetter foreclosure proceeding, and that on January 12, 1917, two days after the period of redemption of Rubin had expired, Midlinsky agreed that he would redeem the premises from the Brandstetter foreclosure as a judgment creditor of Rubin, and as soon as he received the sheriff's deed would convey the property to Rubin on payment by Rubin of the costs and expenses involved plus $500 as Midlinsky's compensation, and that it was also agreed that the grantee in the deed which Rubin was to take from Lillian Jackson for the remaining one-third should be such person as Midlinsky would designate. That bill alleged that Rubin did purchase the Lillian Jackson one-third interest and that the title was taken in the name of Isadore Bernstein, a relative of Midlinsky. That bill

also alleged that in order to enable Midlinsky to redeem as a judgment creditor, Rubin gave him his judgment note for $5000 and judgment was taken thereon, and Midlinsky, in accordance with the agreement, redeemed the premises for $4293. That bill alleged that when Midlinsky got the sheriff's deed he conveyed the property to Abraham Karstein, his father-in-law, and a one-third interest was deeded to Rebecca Karpes, a sister of Midlinsky's wife, for the purpose of clearing title by partition; that a guaranty policy was procured from the title and trust company, for which Rubin paid; that a bill for partition was filed, and the decree for partition entered found that Morris Levin had an interest in one-third of the property, and partition sale was ordered. That bill alleged that Blume, an intimate friend of Midlinsky, who knew of the contract and of Rubin's interest in the premises and had actual and constructive notice thereof, purchased the property at the partition sale for $8000, which was grossly inadequate, and that the purchase for that amount was through a conspiracy between Midlinsky, Blume and Rubin's attorney, and that Blume thereafter secured a quit-claim deed from Levin as to his interest in the premises, to pay which he gave a trust deed on the premises to Charles L. Cohns, trustee, for $3500. That bill also alleged that there were many transactions between Rubin and Midlinsky in which great confidence was reposed on the part of each in the other, and that finally, after Blume had secured the title to this property, Midlinsky for the first time informed Rubin that he had no interest in the property, and that thereafter an attempt at a settlement by arbitration was made but which failed owing to fraud and fraudulent intentions on the part of Midlinsky to defraud Rubin out of his interest in the property. It charged that Midlinsky fraudulently refused to carry out the agreement by which he redeemed the property and by which the partition proceedings were had. The bill also set up that on April 21, 1920, Midlinsky filed a creditor's bill against Rubin

on the $5000 judgment and that in this bill he set up Rubin's claim to the premises, by which proceeding such claim became *lis pendens,* and that since that bill was filed before Blume bought the property at partition sale, Blume had notice of the claims of Rubin. The prayer of that bill was that the court find that Rubin was the real and equitable owner of the premises and that Blume was holding the same in trust for him, and that he be directed, on such terms as the court deemed just, to convey the premises to Blume. As we have seen, general and special demurrers filed to this bill were sustained and the bill dismissed. The decree was later reviewed by the Appellate Court and affirmed and *certiorari* denied by this court.

The bill known as No. 401896 was on April 11, 1924, filed in the superior court of Cook county, to which a plea of *res judicata* was filed and sustained, and the holding of the superior court was affirmed by the Appellate Court and *certiorari* denied by this court, thus establishing that the proceedings in cause No. B84300 were *res judicata* of the issues raised in bill No. 401896.

Bill No. 472406, filed in the superior court of Cook county on February 27, 1928, against which injunctional relief is here sought, sets up the same relationship of the parties and agreement that Midlinsky should redeem the property as judgment creditor of Rubin, and the agreement that thereafter partition sale should be had to clear the title, setting out the same facts alleged in the previous bills as to the agreement of Midlinsky and Rubin and the proceedings that were taken with reference to the property, and alleges that an agreement was entered into between Midlinsky and Leviton, as Rubin's attorney, that Blume should purchase the property at the partition sale for an amount necessary to secure a master's deed, and that he should thereafter hold the property for Rubin's benefit, to be transferred to Rubin when the latter paid the amount of money due to Midlinsky; that no money was actually passed in

the transaction but that the master was given receipts to represent the amounts of money due to the parties in interest. This bill alleges also the same friendly relation, close association between the parties, and that Midlinsky had received rents from these premises for which he had not accounted; sets up subsequent transfers to the Bank of America and by it to Hyman L. Siegel, which the bill alleged were in furtherance of the scheme to defraud Rubin of the property, and that the grantees under such deeds had knowledge of his rights. This bill seeks an accounting, conveyance of the property to him on payment of any sum found due from him to Midlinsky, and prays that the various trust deeds and deeds be ordered canceled as clouds on his title.

The basis of this bill is identical with the basis of the bill in No. B84300. By both it is made to appear that appellant's entire right is based on his relationship and transactions with Midlinsky, and those transactions, as alleged in both bills, are the same. That relationship is set out in both bills as resting on an agreement of Midlinsky to buy in the property and clear it of the liens and hold it for Rubin until such time as he would pay Midlinsky the money he owed him. While the first bill charges that Blume paid $8000 for the property, which was an inadequate consideration, and he bought with knowledge of the rights of Rubin, and in the bill No. 472406 it is charged that Blume in fact paid nothing for the property and the sale was but a purported sale made for Rubin's benefit, the effect of both averments is that Blume bought the property for Midlinsky, who was to hold it until Rubin re-paid to him moneys advanced and then to convey the same to Rubin. The instruments executed afterwards with reference to title to the property as set up in the latter bill, and the right claimed to have them removed as clouds on his title, would flow from the rights alleged to arise out of the relationship between him and Midlinsky and notice, which are stated in

substantially the same allegations of fact in both bills. Those allegations of fact were passed upon in bill No. B84300 and there held not to afford ground for equitable relief. Whether that issue was there correctly decided is not an issue here. It was finally decided by the action of the courts as hereinbefore set out and its disposition is *res judicata* of this proceeding.

Appellant argues that the demurrer was sustained on account of defective pleading and not on the merits. The demurrer was general and special, and the decree of the chancellor and the opinion of the Appellate Court disclose that the demurrers were treated as going to the merits. Certain it is that appellant cannot successfully argue that a decree against one ground of relief is not *res judicata* of a claim arising on another bill, where the two bills, so far as the essence of facts and prayer is concerned, are substantially the same. The chancellor in this case did not err in sustaining the plea of *res judicata*.

Counsel do not disagree as to the rules of law to be applied in matters of *res judicata*, and a discussion of these rules in this case is therefore unnecessary. The argument here arises on the conflict of views pertaining to the question whether the issues and statements of fact involved in these bills are substantially the same. It is conceded that where there is a concurrence of the conditions necessary to render a matter *res judicata*, a decree in the first proceeding is a complete bar to prosecution of a second suit and concludes the parties and their privies as to all matters which might have been litigated in the former action; that where there is identity of subject matter, cause of action, parties and quality of the persons against whom the claim is made, the doctrine of *res judicata* applies. *Foss* v. *People's Gas Light and Coke Co.* 293 Ill. 94; *Markley* v. *People,* 171 id. 260; *Wright* v. *Griffey,* 147 id. 496.

The chancellor also dismissed the cross-bill filed by appellant for want of equity. The cross-bill could not, in

any aspect of the case, be held responsive to a plea of *res judicata* or in any way affect the application of that doctrine. That question was to be determined from an examination of the proceedings on bill No. B84300 and bill No. 472406, under attack here. The decree here appealed from found that the decree in the first bill was *res judicata* of the issues attempted to be raised in the bill under attack here, and also found that appellant had paid no attention to the decisions of those issues in previous proceedings, and that the mere application of the doctrine of *res judicata* would not bring relief to appellees because of the disregard of appellant therefor, and issued a writ of injunction restraining him from instituting any further proceedings in the matter. While the decree states that the cross-bill is dismissed for want of equity, it is also shown that the doctrine of *res judicata* applies to the cross-bill, and the plea thereto is sustained and the cross-bill dismissed.

Injunction was issued on two grounds: First, the application of the doctrine of *res judicata;* and second, vexatious harassment. The cross-bill sets out substantially the facts alleged in the various bills filed by appellant and differs in substance only, in that it prays that the agreement between Midlinsky and appellant be specifically enforced and the property conveyed to him, and that all subsequent liens, deeds or mortgages be held to be subject to his rights in the premises. There is no difference in substance in the various bills setting up the rights of appellant. The mere fact that there is a change in the style of expression, or even a variation in the prayer for relief, does not prevent the application of the doctrine of *res judicata.*

While an attempt to get relief by an inappropriate procedure or misconception of remedy will not deprive one of a remedy when he later seeks to recover the same by a proper bill alleging the facts, (*Chicago Terminal Railroad Co.* v. *Winslow,* 216 Ill. 166; *Lusk* v. *City of Chicago,* 211 id. 183; *Bierce* v. *Hutchins,* 205 U. S. 340,) yet the

doctrine of *res judicata* applies where there is identity of parties, of subject matter and of relief sought, (*Winkelman* v. *Winkelman,* 310 Ill. 568; *Foss* v. *People's Gas Light and Coke Co. supra; In re Northwestern University,* 206 Ill. 64;) and extends not only to questions actually decided but to all grounds of recovery which might have been presented in the first proceeding. *Marie Church* v. *Trinity Church,* 253 Ill. 21; *Lusk* v. *City of Chicago, supra; In re Northwestern University, supra.*

The decree in this case was right and is affirmed.

*Decree affirmed.*